Quentin M. Rhoades
State Bar No. 3969
RHOADES SIEFERT & ERICKSON, P.L.L.C.
430 North Ryman
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 728-5838
qmr@montanalawyer.com

James C. Linger, OBA #5441
1710 South Boston Avenue
Tulsa, Oklahoma 74119-4810
Telephone: (918) 585-2797
Fax: (918) 583-8283
bostonbarristers@tulsacoxmail.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA GREEN PARTY, DANIELLE BRECK, CHERYL WOLFE, HARRY C. HOVING, DOUG CAMPBELL, STEVE KELLY, ANTONIO, MORSETTE, TAMARA R. THOMPSON, and ADRIEN OWEN WAGNER, …..Plaintiffs, v. COREY STAPLETON, in his official capacity as Secretary of State for the State of Montana, …..Defendant. | ) ) ) Cause No. 6:18-cv-00087-H-BMM-JTJ ) ) ) PLAINTIFFS' BRIEF IN ) OPPOSITION TO DEFENDANT'S ) MOTION TO DISMISS UNDER ) FED. R. CIV. P. 12(b)(6) ) ) ) ) ) ) |

<u>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (b) (6)</u>

## I.  INTRODUCTION

The instant case is a ballot access case on behalf of eight registered Montana voters and the Montana Green Party in regard to what had been an initially successful petition drive in 2018, to have the Montana Green Party recognized in Montana pursuant to the requirements of MCA, § 13-10-601(2)(a), (b), (c), and (d).  After being removed from the Montana ballot by a Montana Trial Court for insufficient petition signatures in at least 34 State House Districts, and as subsequently affirmed by the Montana Supreme Court, the Plaintiffs filed the instant case challenging the constitutionality of the aforesaid ballot access law because of the petition signature deadline and the State House petition distribution requirement.  [Complaint, Doc. 1].

On October 18, 2018, the Defendant Corey Stapleton, Secretary of State for Montana, filed a Motion to Dismiss [Doc. 11] and Brief in Support [Doc. 12].  The Defendant's pleadings allege, in effect, that Plaintiffs failed to show an injury fairly traceable to the conduct of Defendant Secretary of State that could be redressed by a favorable decision pursuant to Fed. R. Civ. Proc. 8(a), and that Plaintiffs failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). Defendant's Motion to Dismiss is without merit and, therefore, should be denied.

## II. STANDARD OF REVIEW

In judging a Motion to Dismiss, the U.S. Court of Appeals for the Ninth Circuit views the facts in the complaint as true and grants all reasonable inferences in favor of the nonmoving party.  All material allegations in the complaint are accepted as true and should be construed in the light most favorable to the party opposing the motion to dismiss.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); also see *Kelson v. City of Springfield*, 767 F.2d 651, 653 (9th Cir. 1985), citing *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir. 1983).  "Dismissal for failure to state a claim is proper only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved."  *Kelson, Id*., citing *Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir. 1985).  The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the party opposing the motion to dismiss.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, the "complaint" must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint need not contain detailed factual allegations, but it must provide the grounds for entitlement for relief and not merely a "formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3

Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), quoting in part, *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).

Plaintiffs' complaint herein challenges Montana election laws requiring an unnecessarily early petition signature deadline and a unique and counterproductive unequal distribution requirement that are unconstitutionally burdensome and serve no compelling state interest, while having a serious effect on a minor political party and its potential candidates and voters. Motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b) (6) are not viewed with favor, and were once held to only be appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). More recently, Justice Souter suggested that the aforesaid *Conley* quote should be retired, but that a complaint should not be dismissed simply because a Court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556. Accordingly, a

well-pleaded complaint will survive a motion to dismiss even when the likelihood of recovery appears remote. *Id*.

III. ARGUMENT AND AUTHORITIES

In considering Defendant Secretary of State's motion to dismiss, it is perhaps best to consider what the Plaintiffs are asking for in the case at bar and the particular facts which will be presented to the Court in Plaintiffs' Motion for Summary Judgment. The Montana Green Party is the only minor political party to obtain recognition for ballot status by petitioning in Montana for the 2018 election cycle, and then be derecognized by action of State Courts in applying the state house district petition distribution requirement.

Plaintiffs would have sought preliminary injunctive relief for the 2018 Montana general election if the Attorney General's office had been willing to enter into certain joint stipulations of fact. Unfortunately, because the Attorney General's office was not willing at the time to do so, and because the ballots for Montana had been printed and were being made available to military and overseas voters, the preliminary injunctive relief for the 2018 election became impractical. However, declaratory relief as to the unconstitutionality of the election laws in question, injunctive relief against future enforcement of said election laws, and recognition of the Montana Green Party for the next election cycle are still within the power of the Court to grant. The instant case and the requested relief are not moot because

election law cases such as the case at bar have been recognized by the U. S. Supreme Court to be an exception to the usual mootness rule because the issues contained therein are "capable of repetition, yet evading review." *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.3 (1983); *Mandel v. Bradley*, 432 U.S. 173, 175 n.1 (1977); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 332 n.2 (1972); and *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969).

Plaintiffs' complaint [Doc. 1, ¶¶ I, IV, VII, and VIII] alleges the following facts:  The individual Plaintiffs in the case at bar are residents and registered voters of Montana, citizens of Montana and the United States of America, officers and/or supporters of the Montana Green Party, and signers and/or supporters of a petition for recognition of the Montana Green Party as a Montana political party in 2018.  Several of the Plaintiffs (Campbell, Kelly, and Wagner) were nominated as Montana Green Party candidates for elective office in Montana in 2018.  The individual Plaintiffs wish to have the Montana Green Party recognized as a political party in Montana and wish to have the right to cast their votes effectively for Montana Green Party candidates in the 2018 Montana general election and future Montana elections.

Defendant Corey Stapleton is the Secretary of State for Montana and is the Chief Election Officer of Montana responsible for administering the election and voter registration laws of the State of Montana pursuant to MCA, § 13-1-201, *et seq*.  Under

6

current Montana law, along with certain other specific requirements as to the distribution requirement as to a minimum number of petition signatures from at least 34 of the 100 state house districts, at least 5,000 valid petition signatures of registered Montana voters are required in 2018 and future years for the formation of a new political party in Montana pursuant to MCA § 13-10-601(2)(a), (b), (c), and (d).

In regard to the petition drive to place the Montana Green Party on the ballot in Montana in 2018 as a recognized political party, by March 5, 2018, the Montana Green Party supporters had turned in a total of 10,160 petition signatures for the recognition of the Montana Green Party, pursuant to MCA, § 13-10-601(2) (b), of which 7,386 were verified by various State election officials as valid Montana registered voters. These petition signatures were collected from 47 of the 100 State House Districts in Montana. Initially there were sufficient petition signatures collected in 38 of the State House Districts to comply with the State House District distribution requirement. [Complaint, Doc. 1, ¶ VII].

However, following legal action by three Montana electors and the Montana Democratic Party in state court, on or about July 9, 2018, a State Court Judge found that a total of 82 petition signatures in eight of the State House Districts were invalid for various reasons. In these eight House Districts, the number of required petition signatures were 140, 135, 105, 130, 101, 132, 150, and 150, respectively, even though the population of all these State House Districts was approximately the same after the

2010 census in Montana. This resulted in the Montana Green Party only having sufficient petition signatures under the distribution requirement in 30 State House Districts, rather than the 38 State House Districts the Montana Green Party had had previously. However, the Montana Green Party still had over 7,300 valid petition signatures statewide. Therefore, under current state law, the Montana Green Party was four State House Districts short of the 34 State House Districts required under the petition distribution requirement of MCA § 13-10-601(2)(b) and denied political party recognition even though the Montana Green Party had participated in the nomination of candidates in the primary election.

The distribution requirement as to petition signatures requires that a new political party seeking state recognition obtain not just 5% of the statewide vote for the winning candidate for governor in the last election in Montana (but not more than 5,000 petition signatures), but also 5% of that candidate's vote for governor in at least 34 of the State House Districts. Since the law caps the number of signatures required in a State House District at no more than 150, the current requirement varies from one State House District to another from a low of 55 petition signatures to the aforesaid high of 150 petition signatures. The 150 petition signature cap currently exists for 26 State House Districts, with 53 State House Districts having a requirement of between 100 and 140 petition signatures, and the remaining 21 State House Districts having a petition signature requirement of between 55 and 95 petition signatures.

In regard to Montana's State House district distribution requirement, compared to other states, eight states, including Montana, have distribution requirements for either a statewide independent petition, or a petition to create a new party.  Except for Montana, all the other such states use U.S. House districts instead of state legislative districts:  (1) Michigan requires 100 signatures in each of half the districts, which currently means seven districts; (2) Nebraska's party petition requires 1% of the last gubernatorial vote in each of its three U.S. House districts; (3) New Hampshire's party petition has no distribution requirement, but its statewide independent petition requires 1,500 signatures from each of its two U.S. House districts; (4) New York requires 100 signatures from each of half its U.S. House districts, which currently means 14 districts; (5) North Carolina's party petition requires 200 signatures from three U.S. House districts; (6) Ohio requires 500 signatures in half its U.S. House districts, which now means eight districts; (7) Virginia requires 200 signatures in each of its eleven districts, for minor party and independent presidential petitions, and other statewide petitions need 400 in each U.S. House district.

Montana is the only state in which the in-district requirement is greater than 1% of the last vote cast.  However, even though each state house district has approximately the same population as of the last federal census, the signature requirement in the various state house districts varies from a low of 55 petition

signatures to a high of 150 petition signatures. Thus, the disparity in petition signatures required is almost three times as great from the lowest requirement to the highest. No other state has this particular difference in the number of signatures required. Montana also requires signatures from many more districts than any other state. No other state requires in-district signatures from more than fourteen districts or requires a different number of signatures from its districts.

While Montana is the fourth largest state in geographical area in the United States, it is only the 44th out of 50 states in population, the third least densely populated state, and is one of only seven states in the United States that has a single representative in the U.S. House of Representatives. Only a few states have a distribution requirement spread over a designated number of congressional districts—although none of them base their petition requirement on an unequal signature requirement of a percentage of the winning candidate for any statewide office.

If not for the State House District distribution requirement, the Montana Green Party would have had more than enough petition signatures for political party recognition in Montana in 2018. In the election cycle for Montana for the year 2018, the opening of candidate filing for the primary election was January 11, 2018, the close of candidate filing for the primary election was March 12, 2018, while the political party Federal Primary Election was on June 5, 2018, and the Federal General Election is on November 6, 2018. All the foregoing facts are apparent from reading Plaintiffs'

complaint [Doc. 1], although the facts as to states other than Montana will be presented with Plaintiffs' motion for summary judgment.

Plaintiffs seek declaratory and injunctive relief from the Court. Plaintiffs specifically seek to have MCA, § 13-10-601(2)(a), (b), (c), and (d), on its face and as applied to the Plaintiffs herein for the 2018 Montana General Election and all subsequent general elections in Montana and the facts and circumstances relating thereto, declared unconstitutional. Specifically, what the Plaintiffs are asking for in affirmative relief from the Court is that they be placed on the Montana ballot and that the Montana Green Party be recognized in Montana for future elections. This remedy is necessary because of the unnecessary and unequal State House distribution requirement whose application resulted in the Montana Green Party losing party recognition and ballot access in 2018.

While this case is specifically concerned with asking for declaratory relief holding the election laws in question unconstitutional and placing the Montana Green Party on the Montana ballot for the next General Election cycle, it particularly concerns the requirement in future election cycles after 2018 that will still require a new minor political party to petition at an unnecessarily early petition deadline date and meet an unconstitutional petition signature distribution requirement for a minimum of 34 State House districts which require unequal and differing numbers for said 34 State House districts.

It is undisputed that restrictions on access to the election ballot burden two district and fundamental rights, ". . . the right of individuals to associates for the advancement of political beliefs, the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "The freedom to associate as a political party, a right we have recognized as fundamental [*Williams v. Rhodes*, 393 U.S. at 30-31], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974); "*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 814 (1979).

When these fundamental, constitutionally protected rights are unreasonably or unfairly limited or denied, relief is available to set aside restrictions or denial in an action such as the instant case. It is the contention of the Plaintiffs urging this lawsuit that Montana has gone too far in infringing the Plaintiffs' rights to political association and ballot access for general elections. The teaching of the United States Supreme Court is that:

> "even when pursuing a legitimate interest, a state may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51 (1973), and we have required that states adopt the **least drastic means** to achieve their end. *Lubin v. Panish*, 415 U.S. at 716 . . .; *Williams v. Rhodes*, 393 U.S. at 31-33 . . .. **This requirement is**

**particularly important where restrictions on access to the ballot are involved**.  The state's interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [emphasis added]  *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted].  If the state has open to it a least drastic way of satisfying its legitimate interest, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties.  *Shelton v. Tucker*, 364 U.S. 479 [1960]."  *Kusper v. Pontikes*, 414 U.S. at 58-59.  In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the Classification."  *Storer v. Brown*, 415 U.S. 724, at 730 (1974), citing *Williams v. Rhodes, Id*., and *Dunn v. Blumstein*, 405 U.S. 330 (1974).  Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977).

Montana's unnecessarily early petition deadline coupled with the high petition signature requirement, and the unequal petition distribution requirement in at least 34 State House Districts is unconstitutional, lacks any compelling interest, and unequally and unfairly impacts in a discriminatory manner the right of small, minor, unrecognized political parties in Montana who have collected more than the

required number of 5,000 petition signatures for party formation in Montana. *Moore v. Ogilvie,* 394 U.S. at 819; also see *Blomquist v. Thomson*, 739 F.2d 525, 527-528 (1984). The laws in question challenged herein, when considered with the facts set forth in Plaintiffs' complaint are unconstitutional on their face and as applied to Plaintiffs because the Plaintiffs were able to have sufficient statewide signatures for political party recognition in Montana, but had their State House District distribution signatures reduced from 38 State House Districts to 30 State House Districts where they had the requisite number of signatures. This result is because there is an unequal requirement for the number of signatures required in the requisite 34 State House Districts so as to violate Plaintiffs' equal protection rights under the Fourteenth Amendment and the Constitutional principle of one person, one vote, and because said requirements give greater weight to the votes of some citizens and, thereby, cause inequality in voting power. *Moore v. Ogilvie*, *Id*.; *Communist Party v. State Board of Elections of Illinois*, 518 F.2d 517 (7th Cir. 1975), *cert. den*., 423 U.S. 986 (1975); also see *Blomquist, Id.; McCarthy v. Garrahy*, 460 F.Supp. 1042, 1046 (D.R.I. 1978); *Baird v. Davoren*, 346 F.Supp. 515 (D.Mass. 1972); and *Socialist Workers Party v. Hare*, 304 F.Supp. 534 (E.D. Mich. 1969). Montana's House District distribution requirement discriminates against the House Districts which gave a larger vote to the previous winning candidate for governor as opposed to the House Districts which gave a lesser vote

to the winning candidate for governor.  This problem would have been avoided if the Montana Legislature had at least made the same number of petition signatures required for each of the 34 required State House districts required under the petition distribution requirement.  See *Montana Public Interest Research Group v. Johnson*, 361 F.Supp.2d 1222, 1230 (2005) for a proposal for a geographical distribution requirement that does not violate equal protection.

As the United States Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.  It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties [citation omitted]. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas.  *Anderson v. Celebrezze*, 460 U.S. at 793-794.

In considering Defendant's Brief herein, the cases cited by the Secretary of State are not factually and materially on point, and do not support the arguments made by Defendant in favor of his Motion to Dismiss.  *Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 360 n.1 (9th Cir. 1955); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *Lebbos v. Judges of Superior Court*, 883 F.2d 810, 814 (9th Cir. 1989); *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015); *Kildare v. Saenz*, 325 F.3d 1078, 1085-1086 (9th Cir. 2003); *Ocasio v. Perez*, 735

Fed. Appx. 418, 419 (9th Cir. 2018); *Galen v. County of Los Angeles*, 447 F.3d 652, 662 (9th Cir. 2007); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984).

The Defendant in the instant case, as pled in Plaintiffs' complaint, is the state official who is statutorily responsible in his official capacity for, *inter alia*, administering the election laws of Montana pursuant to MCA, § 13-1-201, *et seq*. Plaintiffs then go on to spell out all the duties of the Defendant Secretary of State in paragraph II of Plaintiffs' complaint [Doc. 1]. These facts differentiate the instant case from the facts argued by Defendant on page 8 of his Brief in Support of his Motion to Dismiss that the Montana Green Party attempts to seek relief that the Court cannot grant because Plaintiffs' claim relates to rights that will be denied under ". . . the laws of the State of Montana . . . ." Defendant then makes reference to ¶ IX(A) of Plaintiffs' Complaint [Doc. 1]. However, what Defendant leaves out in the aforesaid ellipse is rather critical and somewhat questionable considering that the missing words of the ellipse are ". . . and the United States of America." Therefore, not only does the Defendant give the incorrect impression that Plaintiffs are complaining about only losing rights of equal protection and due process under the laws of Montana, rather than also the laws of the United States of America, but also misinterprets the fact that the equal protection and due process violations are the result of the application of ballot access laws of Montana. This misstatement

of the claims of the Plaintiffs results in Defendant arguing that a Title 42 U.S.C. § 1983 action does not provide a mechanism for vindicating State law violations, *Galen*, 447 F.3d at 662, and that the Eleventh Amendment bars § 1983 claims against State officials based on allegations that the officials violated State law. *Pennhurst, Id.* Of course, the Defendant is not violating State law, but rather enforcing an unconstitutional ballot access law contrary to federal constitutional law and case decisions. There is simply no assertion in Plaintiffs' Complaint that there is a State law violation. Therefore, this part of Defendant's argument is totally without merit.

## IV.  CONCLUSION

WHEREFORE, premises considered, the Defendant has failed to show under the applicable standard of review that Plaintiffs' complaint fails to state facts sufficient to set out a claim which would entitle the Plaintiffs to relief, and, therefore, the Plaintiffs pray that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted this 8th day of November, 2018.

/s/ James C. Linger
James C. Linger, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
Telephone: (918) 585-2797
Facsimile: (918) 583-8283
bostonbarristers@tulsacoxmail.com

17

Quentin M. Rhoades
State Bar No. 3969
RHOADES SIEFERT & ERICKSON, P.L.L.C.
430 North Ryman
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 728-5838
qmr@montanalawyer.com

*Counsel for Plaintiffs*

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 3,992 words, excluding caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

/s/ James C. Linger
James C. Linger
Counsel for Plaintiffs

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 8th day of November, 2018.

<u>/s/ James C. Linger</u>
James C. Linger