Quentin M. Rhoades
State Bar No. 3969
RHOADES SIEFERT & ERICKSON, P.L.L.C.
430 North Ryman
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 728-5838
qmr@montanalawyer.com
*Counsel for Plaintiffs*

JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, Oklahoma 74119-4810
Telephone (918) 585-2797
Fax (918) 583-8283
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| MONTANA GREEN PARTY, DANIELLE BRECK, CHERYL WOLFE, HARRY C. HOVING, DOUG CAMPBELL, STEVE KELLY, ANTONIO MORSETTE, TAMARA R. THOMPSON, and ADRIEN OWEN WAGNER,<br><br>Plaintiffs,<br><br>v.<br><br>COREY STAPLETON, in his official capacity as Secretary of State for the State of Montana,<br><br>Defendant. | **Cause No. 6:18-cv-00087**<br><br>***FIRST AMENDED COMPLAINT*** |
|---|---|

Come now the Plaintiffs, pursuant to this Court's Order of January 8, 2019 [Doc. 27], and allege for their First Amended Complaint against the Defendant as follows, to-wit:

## INTRODUCTION

1. This is an action for declaratory and injunctive relief to enjoin violation of Plaintiffs' First and Fourteenth Amendment Rights to actively engage in the exercise of their free speech, right to political association, right to petition, right to form a political party, seek redress of grievances, cast an effective vote, and equal protection and due process of the laws of the United States of America to qualify the Montana Green Party as a recognized political party in Montana, and to order Defendant to recognize the Montana Green Party as a recognized political party in Montana and to place the Montana Green Party's nominated candidates on the ballot for the next Montana election.

## PARTIES

2. Plaintiff MONTANA GREEN PARTY (sometimes hereinafter referred to as MGP) sought recognition as a political party, pursuant to MCA, § 13-10-601(2), in that the MGP conducted a petition drive pursuant to MCA, § 13-10-601(2)(a), for recognition as a Montana political party.

3. Plaintiff DANIELLE BRECK is a resident of Missoula, Montana, a

registered Montana voter, the Coordinator of the MGP, and signed a petition for recognition of the MGP as a Montana political party for 2018.

4. Plaintiff CHERYL WOLFE is a resident of Polson, Montana, a registered Montana voter, is currently the treasurer of the MGP, and signed a petition for recognition of the MGP as a Montana political party for 2018.

5. Plaintiff HARRY C. HOVING is a resident of Billings, Montana, a registered Montana voter, is currently the deputy treasurer of the MGP, and signed a petition for recognition of the MGP as a Montana political party for 2018.

6. Plaintiff DOUG CAMPBELL is a resident of Bozeman, Montana, a registered Montana voter, and was a candidate of the MGP for U.S. Representative for Montana.

7. Plaintiff STEVE KELLY is a resident of Bozeman, Montana, a registered Montana voter, and was a candidate of the MGP for U.S. Senator for Montana.

8. Plaintiff ANTONIO MORSETTE is a resident of Box Elder, Montana, is a registered Montana voter, and signed a petition for recognition of the MGP as a Montana political party for 2018.

9. Plaintiff TAMARA R. THOMPSON is a resident of Missoula, Montana, and a registered Montana voter.

10. Plaintiff ADRIEN OWEN WAGNER is a resident of Heart Butte, Montana, a registered Montana voter, and was a candidate of the MGP for State House District 15.

11. All the above-named individual Plaintiffs are citizens of the State of Montana and the United States of America, and are registered voters in the State of Montana. The individual Plaintiffs hereinabove wish to have the MGP recognized as a political party in the State of Montana and wish to have the right to political association and the right to cast their votes effectively for Montana Green Party candidates in future Montana elections, as well as the recently completed 2018 Montana general election.

12. Defendant COREY STAPLETON is the Secretary of State for the State of Montana (hereinafter referred to as Defendant Secretary), and is the Chief Election Officer of Montana responsible for administering the election and voter registration laws of the State of Montana pursuant to MCA, § 13-1-201, *et seq*. Specifically, the Defendant SECRETARY has supervisory authority over all county election officers, has responsibility to promulgate, repeal or modify such rules or regulations as he deems necessary to facilitate and assist in achieving and maintaining uniformity in the application, operation, and interpretation of the State and Federal election laws and a maximum degree of correctness, impartiality, and

efficiency in administration of the election laws, and to act as the chief state election officer responsible for coordination of state responsibilities and to operate and perform such duties as are prescribed by law for the purposes of overseeing elections conducted in the State of Montana.

13. Defendant Secretary has offices in Room 260, Montana Capitol Building, Helena, Montana, 59620-2801.

## FEDERAL JURISDICTION AND VENUE

14. The basis on which the jurisdiction of the Court is invoked is pursuant to Title 28, U.S.C., §§ 1343(3), 1343(4), 2201, and 2202, and Title 42, U.S.C., § 1983. The rights, privileges, and immunities sought to be declared and redressed are those secured by the First and Fourteenth Amendments to the United States Constitution. The basis of venue in this district and division is pursuant to Title 28, U.S.C., § 1391.

## ALLEGATIONS COMMON TO ALL COUNTS

15. In 2018, the Montana statewide primary election date was June 5, 2018, and the statewide general election date was November 6, 2018.

16. The MGP sought to qualify candidates to be on Montana's 2018 primary and general election ballot in accordance with MCA § 13-10-601.

17. The MGP undertook a signature-gathering effort to collect enough

signatures to be on the ballot in Montana in 2018.

18.   For the 2018 election, the deadline to submit signed political party qualification petitions and affidavits of signature gatherers to county election administrators pursuant to MCA § 13-10-601(2)(c) was March 5, 2018, which is one (1) week before the deadline provided in MCA § 13-10-601(2)(d), and which is 85 days before the date of the primary election—which was March 12 in 2018.

19.   There is no earliest date to gather political party qualification petition signatures or to submit signed political party qualification petitions to county election administrators.

20.   The MGP obtained 10,160 signatures, and state election officials verified 7,386 of the petition signatures.

21.   These petition signatures were collected from 47 of the 100 State House Districts.

22.   Three electors and the Montana Democratic Party filed a lawsuit challenging a number of petition signatures in the Montana First Judicial District Court in Lewis and Clark County, *Larson, et al. v. State of Montana, etc.*, Cause No. DDV-2018-295.  The suit named the Secretary of State as the defendant and the Montana Green Party as an "interested party," but not as a defendant.  Although the MGP resisted the preliminary injunction at hearing, the MGP never filed a pleading

in the aforesaid State case.

23.    Before the legal challenge, the Montana Green Party's petition qualified in 38 of the 100 House Districts.

24.    The state court invalidated a total of 87 petition signatures from the following eight State House Districts 20, 21, 43, 54, 56, 80, 83, and 84, out of 209 petition signatures challenged as being erroneously counted as valid in nine State House Districts after finding that a signature gatherer had submitted a false affidavit, that some voter signatures did not match the corresponding voter registration card, that voter signature did not match the corresponding voter registration card, that some signatures had been improperly verified, that some signatures were matched to the wrong registered voters, that some petition entries contained no date or were postdated or altered, and that some petition entries did not contain a printed name.

25.    The state district court concluded that in State House Districts 20, 21, 43, 54, 56, 80, 83, and 84, the numbers of required petition signatures were, respectively, 140, 135, 105, 130, 101, 132, 150, and 150, but that the number of valid petition signatures from the aforesaid State House Districts found by the state district court were 138, 128, 103, 127, 95, 125, 144, and 140, respectively, thus, leaving a deficiency in valid petition signatures from the aforesaid State House Districts of 2 signatures, 7 signatures, 2 signatures, 3 signatures, 6 signatures, 7

signatures, 6 signatures, and 10 signatures, respectively.

26. The state court's invalidation of signatures from these districts resulted in the MGP not qualifying in the required minimum of 34 House Districts, but only having sufficient petition signatures under the Montana distribution requirement so as to qualify in 30 House Districts, and the MGP was therefore removed from the election ballot. However, the issue of the constitutionality of the Montana petition distribution requirement was not at issue and was neither briefed nor argued in the State case.

27. Both the Secretary of State and the MGP filed notices of appeal with the Montana Supreme Court.

28. On July 25, 2018, the MGP moved to dismiss its cross-appeal.

29. On August 13, 2018, while its motion to dismiss was pending before the Montana Supreme Court, the MGP filed this federal court action challenging the petition signature requirement for the formation of a new political party in Montana based on an early petition deadline, relatively high petition signature requirement, and—especially, the petition signature distribution requirement of at least sufficient petition signatures to equal five percent of the vote cast for the winning candidate for Montana governor in the previous election in each of at least 34 State House Districts.

30. On August 16, 2018, the Montana Supreme Court granted the Montana Green Party's motion to dismiss its cross-appeal.

31. On August 21, 2018, the Montana Supreme Court affirmed the state court ruling with no analysis or opinion and stated that it would issue a full opinion at a later date. As of the date of this filing no opinion of any kind has yet been issued and no date has been set by the Montana Supreme Court for when it might issue such an opinion, even though the 2018 elections are long since passed.

32. The individual Plaintiffs in the case at bar are residents and registered voters of Montana, citizens of Montana and the United States of America, officers and/or supporters of the MGP, and signers and/or supporters of a petition for recognition of the MGP as a Montana political party in 2018. Several of the Plaintiffs (Campbell, Kelly, and Wagner) were nominated as MGP candidates for elective office in Montana in 2018. The individual Plaintiffs wish to have the MGP recognized as a political party in Montana and wish to have the right to cast their votes effectively for the MGP candidates in future Montana elections, as well as the recently completed 2018 general election.

33. Defendant Corey Stapleton is responsible for administering the election and voter registration laws of the State of Montana pursuant to MCA, § 13-1-201, *et seq*.

34. Under current Montana law, along with certain other specific requirements as to the distribution requirement as to a minimum number of petition signatures from at least 34 of the 100 state house districts, Montana law also requires a petition signature deadline of 85 days before the primary election to forward the verified petition to the Secretary of State—although the petition signatures must be in to county election administrators by at least one (1) week before the aforesaid deadline of MCA § 13-10-601(2)(d), coupled with at least 5,000 valid petition signatures of registered Montana voters in 2018 and future years for the formation of a new political party in Montana pursuant to MCA § 13-10-601(2)(a), (b), (c), and (d).

35. The petition drive to place the MGP on the ballot in Montana in 2018 as a recognized political party, by March 5, 2018, resulted in the MGP supporters turning in a total of 10,160 petition signatures for the recognition of the MGP, pursuant to MCA, § 13-10-601(2) (b), of which 7,386 were verified by various State election officials as valid Montana registered voters.

36. These petition signatures were collected from 47 of the 100 State House Districts in Montana. Initially there were sufficient petition signatures collected in 38 of the State House Districts to comply with the State House District distribution requirement.

37. Following legal action by three Montana electors and the Montana Democratic Party in state court, on or about July 9, 2018, a State Court Judge found that a total of 87 petition signatures in eight of the State House Districts were invalid for various reasons.

38. In these eight State House Districts, the number of required petition signatures were 140, 135, 105, 130, 101, 132, 150, and 150, respectively, even though the population of all these State House Districts was approximately the same after the 2010 census in Montana. This resulted in the MGP only having sufficient petition signatures under the distribution requirement in 30 State House Districts, rather than the 38 State House Districts the MGP had had previously. Yet, the MGP still had approximately 7,300 valid petition signatures statewide.

39. Under current state law, the MGP was four State House Districts short of the 34 State House Districts required under the petition distribution requirement of MCA §13-10-601(2)(b) and denied political party recognition even though the MGP had participated in the nomination of candidates in the 2018 primary election.

40. The distribution requirement as to petition signatures requires that a new political party seeking state recognition obtain not just 5% of the statewide vote for the winning candidate for governor in the last election in Montana (but not more than 5,000 petition signatures), but also 5% of that candidate's vote for governor in

at least 34 of the State House Districts. Since the law caps the number of signatures required in a State House District at no more than 150, the current requirement varies from one State House District to another from a low of 55 petition signatures to the aforesaid high of 150 petition signatures. The 150 petition signature cap currently exists for 26 State House Districts, with 53 State House Districts having a requirement of between 100 and 140 petition signatures, and the remaining 21 State House Districts having a petition signature requirement of between 55 and 95 petition signatures.

      41.    In regard to Montana's State House district distribution requirement, compared to other states, eight states, including Montana, have distribution requirements for either a statewide independent petition, or a petition to create a new party. Except for Montana, all the other such states use U.S. House districts instead of state legislative districts: (1) Michigan requires 100 signatures in each of half the districts, which currently means seven districts; (2) Nebraska's party petition requires 1% of the last gubernatorial vote in each of its three U.S. House districts; (3) New Hampshire's party petition has no distribution requirement, but its statewide independent petition requires 1,500 signatures from each of its two U.S. House districts; (4) New York requires 100 signatures from each of half its U.S. House districts, which currently means 14 districts; (5) North Carolina's party

petition requires 200 signatures from three U.S. House districts; (6) Ohio requires 500 signatures in half its U.S. House districts, which now means eight districts; (7) Virginia requires 200 signatures in each of its eleven districts, for minor party and independent presidential petitions, and other statewide petitions need 400 in each U.S. House district.

42. Montana is the only state in which the in-district requirement is greater than 1% of the last vote cast. Even though, however, each state house district has approximately the same population as of the last federal census, the signature requirement in the various state house districts varies from a low of 55 petition signatures to a high of 150 petition signatures. Thus, the disparity in petition signatures required is almost three times as great from the lowest requirement to the highest.

43. No other state has this particular difference in the number of signatures required. Montana also requires signatures from many more districts than any other state. No other state requires in-district signatures from more than fourteen districts or requires a different number of signatures from its districts.

44. While Montana is the fourth largest state in geographical area in the United States, it is only the 44th out of 50 states in population, the third least densely populated state, and is one of only seven states in the United States that has

a single representative in the U.S. House of Representatives.

45. Only a few states have a distribution requirement spread over a designated number of congressional districts—although none of them base their petition requirement on an unequal signature requirement of a percentage of the winning candidate for any statewide office.

46. If not for the State House District distribution requirement, the MGP would have had more than enough petition signatures for political party recognition in Montana in 2018. In the election cycle for Montana for the year 2018, the opening of candidate filing for the primary election was January 11, 2018, the close of candidate filing for the primary election was March 12, 2018, while the political party primary election was on June 5, 2018, and the general election was on November 6, 2018.

## COUNT I

**(Declaratory Relief – Right to Freedom of Political Association/ Right to Cast a Vote Effectively/Right to Petition)**

47. Plaintiffs reallege and restate each and every material allegation as contained in the Introduction, Parties, Federal Jurisdiction and Venue, and Allegations Common to All Counts hereinabove, and allege and state in addition thereto as follows, to-wit:

48. Plaintiffs have a fundamental right to political association protected by the First Amendment to the U.S. Constitution, which includes both the right of individuals to associate for the advancement of political beliefs and the right of individuals to vote for the candidates or parties of their choice.

49. Montana's statutory scheme, as described herein, is intended to and does restrict Plaintiffs' access to the election ballot.

50. Montana's ballot restrictions unduly burden Plaintiffs' fundamental right to political association for the advancement of political beliefs.

51. Montana's ballot restrictions unduly burden Plaintiffs' right to cast their vote effectively and to petition.

52. Montana's restrictions are so significant of an encroachment upon Plaintiffs' associational freedom that Plaintiffs are entitled to a judgment declaring Montana's statutory scheme, as described herein, to be in violation of Plaintiffs' U.S. Constitutional right of freedom of political association, right to cast their vote effectively, and right to petition.

## COUNT II
### (Declaratory Relief – Equal Protection)

53. Plaintiffs reallege and restate each and every material allegation as contained in the Introduction, Parties, Federal Jurisdiction and Venue, Allegations

Common to All Counts, and Count I hereinabove, and allege and state in addition thereto as follows, to-wit:

54. Plaintiffs have a right to equal protection of the laws under the Fourteenth Amendment and the Constitutional principle of one person, one vote, meaning state law cannot give greater weight to the votes of some citizens than it does to others.

55. Montana's statutory scheme unnecessarily early petition deadline, coupled with the relatively high petition signature requirement, and the unequal petition distribution requirement in at least 34 State House unequally and unfairly impacts in a discriminatory manner the right of small, minor, unrecognized political parties in Montana who have collected more than the required number of 5,000 petition signatures for party formation in Montana.

56. Montana's discriminatory statutory scheme for ballot access for new political parties violates Plaintiffs' right to equal protection of the laws, is arbitrary and capricious, and is unconstitutional on both its face and as applied.

57. Plaintiffs are entitled to a judgment declaring Montana's aforesaid statutory scheme to be in violation of Plaintiffs' U.S. Constitutional right of equal protection of the laws.

## COUNT III

## (Injunctive Relief)

58. Plaintiffs reallege and restate each and every material allegation as contained in the Introduction, Parties, Federal Jurisdiction and Venue, Allegations Common to All Counts, and Counts I and II hereinabove, and allege and state in addition thereto as follows, to-wit:

59. Plaintiffs have suffered and will continue to suffer irreparable injury by the policy, practice, custom, and usage of defendant's complained of actions in this complaint until the defendant is enjoined by this court.

60. Plaintiffs have no other adequate remedy at law to redress the grievances set forth in this pleading other than this suit for injunctive relief.

## REQUEST FOR RELIEF

Accordingly, premises considered, Plaintiffs request judgment:

1. Declaring § 13-10-601(2)(a), (b), (c), and (d), MCA, unconstitutional, both facially and as applied to the Plaintiffs herein for the 2018 Montana General Election and all subsequent general elections in Montana and the facts and circumstances relating thereto as set forth hereinabove in that they are in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. Permanently enjoining Defendant from enforcing § 13-10-601(2)(a), (b), (c), and (d), MCA.

3. Ordering the Defendant to recognize the Montana Green Party as a political party in the State of Montana for the next Montana election cycle.

4. Awarding to Plaintiffs their reasonable costs and expenses of this action, including attorney fees pursuant to Title 42, U.S.C. § 1988.

5. Granting Plaintiffs such further relief as to which they may be entitled and which the Court may deem equitable and just.

Dated this 14th day of January, 2019.

By: /s/ Quentin M. Rhoades
QUENTIN M. RHOADES
State Bar No. 3969
Rhoades, Siefert & Erickson, PLLC
430 N. Ryman
Missoula, MT 59802
Telephone (406) 721-9700
Fax (406) 721-5838
qmr@montanalawyer.com
*Counsel for Plaintiffs*

By: /s/ James C. Linger
JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, Oklahoma 74119-4810
Telephone (918) 585-2797
Fax (918) 583-8283
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

Dated:  January 14, 2019             */s/* James C. Linger