QUENTIN M. RHOADES
State Bar No. 3969
Kristin Bannigan
State Bar No. 36435405
RHOADES SIEFERT &
   ERICKSON, P.L.L.C.
430 North Ryman
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 728-5838
qmr@montanalawyer.com

JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, Oklahoma 74119-4810
Telephone (918) 585-2797
Facsimile (918) 583-8283
bostonbarristers@tulsacoxmail.com

COUNSEL FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA GREEN PARTY, DANIELLE BRECK, CHERYL WOLFE, HARRY C. HOVING, DOUG CAMPBELL, STEVE KELLY, ANTONIO MORSETTE TAMARA R. THOMPSON, and ADRIEN OWEN WAGNER,<br><br>              Plaintiffs,<br><br>  v.<br><br>COREY STAPLETON, in his official capacity as Secretary of State for the State of Montana,<br>              Defendant. | Cause No. CV-18-87-H-BMM-JTJ<br><br>**JOINT STATEMENT OF UNDISPUTED FACTS** |

Pursuant to this Court's order entered November 25, 2019 [Doc. 60], and as a further supplement to the Statement of Stipulated Facts filed on January 3, 2019 [Doc. 19], Plaintiffs' Statement of Undisputed Facts filed on September 18, 2019 [Doc. 37], Defendant's Statement of Undisputed Facts in support of Motion for Summary Judgment filed on September 27, 2019 [Doc. 43], Defendant's Statement of Disputed Facts Re: Plaintiffs' Motion for Summary Judgment filed on October 9, 2019 [Doc. 46], and Plaintiffs' Statement of Disputed Facts in opposition to Defendant's Motion for Summary Judgment filed on October 18, 2019 [Doc. 49], Plaintiffs file this Joint Statement of Undisputed Facts to which all parties agree:

1.      In 2018, the Montana statewide primary election date was June 5, 2018, and the statewide general election date was November 6, 2018.

2.      The Montana Green Party sought to qualify candidates to be on Montana's 2018 primary and general election ballot in accordance with Mont. Code Ann. § 13-10-601.

3.      The Montana Green Party undertook a signature-gathering effort to collect enough signatures to be on the ballot in Montana in 2018.

4.      For the 2018 election, the deadline to submit signed political party qualification petitions and affidavits of signature gatherers to county election administrators was March 5, 2018.

5.     There is no earliest date to gather political party qualification petition signatures or to submit signed political party qualification petitions to county election administrators.

6.     The Montana Green Party obtained 10,160 signatures, and state election officials verified 7,386 of the petition signatures.

7.     These petition signatures were collected from 47 of the 100 State House Districts.

8.     At least 9,461 of the 10,160 signatures that were submitted in support of the Montana Green Party came from four counties: Cascade, Missoula, Lewis and Clark, and Yellowstone.

9.     On March 12, 2018, based on 7,386 signatures certified from 38 legislative districts, the Secretary of State certified the Montana Green Party as qualified to nominate candidates for public office pursuant to Mont. Code Ann. § 13-10-601(2). *Larson v. Montana*, 2019 MT 28, 434 P.3d 241, ¶ 5 (Mont. 2019).

10.     A group called Advanced Micro Targeting (AMT) claimed responsibility for obtaining more than 9,000 signatures submitted for the Green Party.  See Montana Democratic Party v. Advanced Micro Targeting, COPP 2018-CFP-004 available on the Commissioner of Political Practice's website:

https://politicalpractices.mt.gov/Portals/144/2018decisions/MDC%20v.%20AMT%20Suff%20Dec_Final.pdf?ver=2018-07-20-150151-903.

11.    The Green Party was aware of the theory that AMT was trying to get the Party on the ballot to affect the United States Senate race in Montana.

12.    The Green Party never spoke with AMT, did not hire AMT, and did not appreciate AMT's "assistance" because it threw the Green Party into "politics-as-usual" game-playing instead of convincing voters of the merits of the Party's ideals.

13.    Three electors and the Montana Democratic Party filed a lawsuit challenging a number of signatures. The suit named the Secretary of State as the defendant and the Montana Green Party as an interested party.

14.    Before the legal challenge, the Montana Green Party's petition qualified in 38 of the 100 House Districts.

15.    The 100 State House Districts were set up as to current boundaries after the 2010 census in Montana and had approximately the same population in 2010.

16.    The state court invalidated a number of signatures from House Districts 20, 21, 43, 54, 56, 80, 83, and 84, after finding that a signature gatherer had submitted a false affidavit, that voter signatures did not match the corresponding voter registration card, that some signatures had been improperly verified, that signatures were matched to the wrong registered voters, that petition entries contained no date or were postdated or altered, and that some petition entries did not contain a printed name.

17.    The state district court concluded that in House Districts 20, 21, 43, 54, 56, 80, 83, and 84, the numbers of required petition signatures were, respectively, 140, 135, 105, 130, 101, 132, 150, and 150.

18.    The state district court concluded that in House Districts 20, 21, 43, 54, 56, 80, 83, and 84, the numbers of certified petition signatures were, respectively, 145, 141, 107, 141, 103, 138, 161, and 151.

19.    The state district court concluded that in House Districts 20, 21, 43, 54, 56, 80, 83, and 84, the numbers of certified petition signatures that were valid were, respectively, 138 (short of the 140 signatures required by 2 signatures), 128 (short of the 135 signatures required by 7 signatures), 103 (short of the 105 signatures required by 2 signatures), 127 (short of the 130 signatures required by 3 signatures), 95 (short of the 101 signatures required by 6 signatures), 125 (short of the 132 signatures required by 7 signatures), 144 (short of the 150 signatures required by 6 signatures), and 140 (short of the 150 signatures required by 10 signatures).

20.    The aforesaid eight State House Districts in which a number of the Montana Green Party petition signatures collected were found to be invalid required petition signatures of 140, 135, 105, 130, 101, 132, 150, and 150, respectively, even though the population of all these State House Districts was approximately the same after the 2010 census in Montana.

5

21.    The state court's invalidation of signatures from these districts resulted in the Montana Green Party not qualifying in the required minimum of 34 House Districts, but only having sufficient petition signatures under the Montana distribution requirement so as to qualify in 30 House Districts, and the Montana Green Party was therefore removed from the election ballot.

22.    The Montana Green Party still had 7,299 certified petition signatures.

23.    While the state court proceeding was ongoing, the Montana Green Party continued to campaign for its candidates, promoted the Party's platform, endorsed candidates, and encouraged voters to cast write-in votes for Green Party candidates.

24.    Even minor parties that are not qualified can endorse candidates.

25.    Several Plaintiffs voted for Green Party candidates.

26.    Both the Secretary of State and the Montana Green Party filed notices of appeal with the Montana Supreme Court.

27.    On July 25, 2018, the Montana Green Party moved to dismiss its cross-appeal.

28.    On August 13, 2018, while its motion to dismiss was pending before the Montana Supreme Court, the Montana Green Party filed this federal court action.

29.    On August 16, 2018, the Montana Supreme Court granted the Montana Green Party's motion to dismiss its cross-appeal.

6

30.    On August 21, 2018, the Montana Supreme Court affirmed the state court ruling and stated that it would issue a full opinion at a later date. On January 30, 2019, the Montana Supreme Court issued its full opinion affirming the state court ruling. *Larson v. Montana*, 2019 MT 28, 434 P.3d 241 (Mont. 2019).

31.    Plaintiff Danielle Breck is a resident of Missoula, Montana, a registered Montana voter, the Coordinator of the Montana Green Party, and signed a petition for recognition of the Montana Green Party as a Montana political party for 2018.

32.    Plaintiff Cheryl Wolfe is a resident of Polson, Montana, a registered Montana voter, and is the treasurer of the Montana Green Party.

33.    The Montana Secretary of State has no record of Cheryl Wolfe signing a petition for recognition of the Montana Green Party for 2018.

34.    Plaintiff Harry C. Hoving is a resident of Billings, Montana, a registered Montana voter, the deputy treasurer of the Montana Green Party, and a signer of the petition for recognition of the Montana Green Party as a Montana political party for 2018.

35.    Plaintiff Doug Campbell was the 2018 Montana Green Party candidate for U.S. Representative for Montana.

36.    Plaintiff Steve Kelly was the 2018 Montana Green Party candidate for U.S. Senator for Montana.

37.    Plaintiff Antonio Morsette is a resident of Box Elder, Montana, is a registered Montana voter, and signed a petition for recognition of the Montana Green Party as a Montana political party for 2018.

38.    Plaintiff Tamara R. Thompson is a resident of Missoula, Montana, and a registered Montana voter.

39.    Plaintiff Adrien Owen Wagner is a resident of Heart Butte, Montana, a registered Montana voter, and was the 2018 Montana Green Party candidate for State House District 15.

40.    All the individual Plaintiffs are citizens of the State of Montana and the United States of America.

41.    Defendant Corey Stapleton is the Montana Secretary of State.

42.    Defendant Corey Stapleton is sued in his official capacity only.

43.    For election year 2018 in Montana, the Montana Green Party's nominee for State Senate District 49 was Greg Strandberg. There is one other candidate that was registered to run on the Montana Green Party's ticket because of Montana's open primary process, but the Montana Green party did not support that candidate.

44.    Under Mont. Code Ann. § 13-10-601(2), a political party that does not qualify to hold a primary election under Mont. Code Ann. § 13-10-601(1) may qualify to nominate its candidates by primary election by presenting a petition signed by registered voters. The petition must be signed by either 5,000 electors or by a number

8

of registered voters equal to 5% of the total votes cast for the successful candidate for governor at the last general election, whichever is less. The number of signatures must include signatures of registered voters in one-third of legislative districts equal to 5% or more of the total votes cast for the successful candidate for governor at the last general election in those districts or 150 electors in those districts, whichever is less.

45.    As to the current election cycle, the deadline to submit new political party qualification petitions to county election administrators is March 2, 2020; the deadline for the Secretary of State to receive verified new political party qualification petitions from county election administrators is March 9, 2020; the Montana statewide primary election date is June 2, 2020; and the Montana General Election is November 3, 2020.

46.    As applicable to the 2018 general election and the upcoming 2020 general election, the 150-petition signature cap currently would apply to 26 State House Districts. 53 State House Districts would require between 100 and 140 petition signatures, and the remaining 21 State House Districts would require between 55 and 99 petition signatures.

47.    While Montana has a petition distribution requirement for the recognition of new political parties, Montana does not have a petition distribution requirement for either statewide independent candidates or independent presidential candidates.

48.     While Montana is the fourth largest state in geographical area in the United States, it is the third least densely populated state, and is one of only seven states in the United States that has a single representative in the U.S. House of Representatives.

49.     During the years when no petition was required for new parties to appear on the ballot, Montana never had a ballot with more than six parties on the ballot-- which occurred in 1936.

50.     In 1999, the Montana Legislature amended Mont. Code Ann. §13-10-601 to allow a party to gain recognition by gathering 5,000 signatures or 5% of the votes cast for the successful gubernatorial candidate, whichever amount is less. *Compare* Mont. Code Ann. §3-10-601 (1997) *with* Mont. Code Ann. § 13-10-601 (1999).

51.     Before 1999, political parties could gain access to the ballot by petition only if they obtained a number of signatures equal to 5% or more of the votes cast for the last successful candidate for governor.  Mont. Code Ann. §13-10-601 (1997).

52.     In 2016, the 5,000 signatures required for a minor party to achieve ballot access amounted to just .72% of the 694,370 registered voters and .967% of the 516,901 votes cast at the general election.  The 5,000 signatures required for a minor party to achieve ballot access amounted to 1.95% of the votes cast for the successful gubernatorial candidate in 2016.  In 2016, the successful gubernatorial

candidate received 255,933 votes, 5% of the votes cast for the successful gubernatorial candidate in the 2016 election was 12,797.

53.    Elections in Montana are administered by the clerks of Montana's 56 counties.  Mont. Code Ann. § 13-1-301.  In addition to their daily duties as clerks and recorders, Mont. Code Ann. §§ 7-4-2611, -13, county election administrators spend more than a year preparing for the general elections.

54.    Petition gatherers can gather signatures from residents of counties other than the county in which the gatherer is gathering signatures, just by having different pieces of paper.  If a person wants to sign a petition and the gatherer does not have a form with that person's county, the gatherer can simply write down the name of the county in which the signee resides at the bottom of a blank form with the rest of the required information.

55.    Any registered voter can sign a petition, and there is no requirement that the voter be a member of the party or even intend to vote for the party.

56.    A voter who has signed a petition for one minor party may also sign a petition for other minor parties.  And a voter who signs a petition for a minor party remains free to participate in any party's primary.

57.    Signed political party qualification petitions must be presented to the election administrator of the county in which the signatures were gathered at least 92 days before the date of the primary.  Mont. Code Ann., §13-10-601(2)(c).

58.    The election administrator must verify the petition signatures and forward

the verified petition to the Montana Secretary of State at least 85 days before the

date of the primary.  Mont. Code Ann. §13-10-601(2)(d).

59.    In the 85 days before a primary election, election administrators must

perform the following tasks: certify to the Commissioner of Political Practices

names of statewide and state district candidates who have complied with filing

requirements; certify to the Commissioner names of county candidates who have

complied with filing requirements; set up the election in our Unity-on-Line

software and enter candidate information; order ballots; verify ballot layout; send

AutoMARK, ExpressVote, and voting equipment media into the voting system

vendor ES&S for programming; advertise a public test of voting equipment;

conduct testing of media on all equipment; conduct a public test of all equipment;

send letters to political parties about the list of election judges; appoint election

judges and send out notification of the appointments; set up training of election

judges and send out notification of training; conduct election judge training;

advertise the close of voter registration; advertise the voting system diagram and

ballot layout; run the voter register and verify the register; prepare tally books, poll

books, and abstracts for polling places; advertise polling place locations; prepare

absentee ballot instructions; prepare and mail ballots to absent military and

overseas voters; and prepare the permanent absentee ballot mailing. These tasks are time intensive and take weeks to complete.

60.    Election judge training takes more than a week, including preparation for the election administrators.

61.    Starting 30 days before an election, election administrators must: mail out permanent absentee ballots; start late registration and issue absentee ballots to newly registered voters; issue absentee ballots to absentee voters; administer absentee voting; set up voting booths in polling places; deliver supplies, ballot boxes, and other equipment to polling places; and hold the election.

62.    The most time-consuming processes for election administrators are absentee voting and late registration. Together, these tasks occupy election administrators for most of the 30 days before an election, even with temporary employees.

63.    Once the Secretary of State certifies a ballot, the local election administrators then must "have the official ballots prepared." Mont. Code Ann. 13-12-201(2). This process involves preparation of drafts of the ballots, frequent review of the drafts by the Secretary of State's Office in conjunction with the counties to ensure compliance with statewide uniformity requirements (Mont. Code Ann. 13-12-202), development and review of final ballot information, and submission of the information to a professional printer for printing.

64.     Ballots are submitted to a printing company for printing by each county. Most counties use Election Systems and Software for ballot printing and most provide ballot layout information to the ballot printers within a week of certification.  After the printers receive the ballot orders, they prepare proofs of each ballot style, provide them to counties for review and correction of any errors, and test the proofs in the tabulation equipment.

65.     As a practical matter it requires seven to ten days for the printer to print the ballots.

66.     To prepare the ballots for mailing prior to the deadline for the availability of overseas and absent military ballots, the local election administrators and the printers must agree on the final content of the ballot for each county within 55 days of the general election.  Preparing and mailing absentee ballots takes two to three weeks.

67.     For absentee ballots, before the county election administrators can mail out the ballots, the administrator collates different ballot styles with the correct personalized outgoing envelopes, correct personalized return envelopes, secrecy envelopes and instruction sheets.

68.     Under the pre-2009 statutory scheme, election administrators and the Secretary of State were concerned that there was not enough time for the Secretary of State's Office, the Commissioner of Political Practices, and the county election

administrators to ensure that the ballots were accurate in both form and content.  In

2008, counties were required to submit their ballot information electronically by

Monday, March 31.  Due to the tight statutory deadlines, the Secretary of State's

Office could not certify the ballot to the counties until Friday, March 28.  Counties

thus had one working day to prepare the ballots.  Nineteen counties did not meet

the March 31 deadline and received letters from the ballot printing company that

the company might be unable to comply with the deadline for having ballots

available for absent military and overseas voters.

69.    In regard to the history of the usage of the Montana New Party Petition, since

1981, in the 38 years since the petition to recognize a new party has existed, only

eight times has that petition been completed successful: (1) the Libertarian Party in

1982; (2) the Natural Law Party in 1996; (3) the Reform Party in 1996; (4) the

Constitution Party in 2000, 2002, 2004, and 2006; and (5) the Americans Elect Party

in 2012.

70.    Although the Green Party was recognized as a qualified party in Montana

from November 2000 through November 2004, it never completed the party

petition.  It attained its status by the alternate method of running a presidential

candidate in 2000 whose vote total matched the percentage needed for party

recognition.  The Green Party is the only group that attained party status by that

alternate method, in the years since petitions were first required for new or previously unqualified parties to get on the ballot.

71.     Since the 2000 election, 53 statewide minor party and independent candidates have qualified for the general election ballot, and 161 have qualified for legislative elections.

72.     Minor parties have repeatedly qualified by petition under March deadlines similar to the one at issue: the Libertarian Party qualified four candidates in 1982 (10,547 signatures); the Natural Law Party qualified four candidates in 1996 (11,370 signatures); Becky Shaw qualified as a single statewide candidate for the Reform Party in 1996 (11,197 signatures); the Constitution Party qualified in 2000 (7,511 signatures) and 2004 (5,707 signatures); Ron Marquardt qualified as a single statewide candidate for the Constitution Party in 2006 (6,299 signatures); and the Americans Elect Party qualified in 2012 (9,818 signatures).

Dated this 3rd day of December, 2019.

/s/ James C. Linger
James C. Linger, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
Telephone (918) 585-2797
Facsimile (918) 583-8283
bostonbarristers@tulsacoxmail.com

Quentin M. Rhoades
State Bar No. 3969
Kristin Bannigan
State Bar No. 36435405
RHOADES SIEFERT &
  ERICKSON, P.L.L.C.
430 North Ryman
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 728-5838
qmr@montanalawyer.com

*Counsel for Plaintiffs*


Timothy C. Fox
Montana Attorney General
/s/ Matthew T. Cochenour
Matthew T. Cochenour
Acting Solicitor General
Hannah E. Tokerud
Patrick M. Risken
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
mcochenour2@mt.gov
hannah.tokerud@mt.gov

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the cm/ecf system.

Dated:  <u>December 3, 2019</u>                    <u>/s/ James C. Linger</u>