IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA GREEN PARTY, DANIELLE BRECK, CHERYL WOLFE, HARRY C. HOVING, DOUG CAMPBELL, STEVE KELLY, ANTONIO MORSETTE, TAMARA R. THOMPSON, and ADRIEN OWEN WAGNER,<br><br>Plaintiffs,<br><br>vs.<br><br>COREY STAPLETON, in his official capacity as Secretary of State for the State of Montana,<br><br>Defendant. | CV 18-87-H-BMM-JTJ<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS |

**INTRODUCTION**

Plaintiffs Montana Green Party and eight registered Montana voters (collectively "Plaintiffs") brought this action against Montana's Secretary of State Corey Stapleton ("Stapleton"). (Doc. 29.) Plaintiffs challenge the constitutionality of the signature requirement that a minor political party must meet to be placed on an election ballot in Montana. Plaintiffs assert that the signature requirement violates the First and Fourteenth Amendments of the United States Constitution.

1

Plaintiffs request that the Court declare the signature requirement for individual legislative districts unconstitutional and enjoin the requirement's enforcement. (*Id.* at 12-13.)

Plaintiffs and Stapleton filed cross-motions for summary judgment. (Docs. 36 & 41.) The parties agree that no genuine issues of material fact exist with respect to Plaintiffs' claims. Judge Johnston issued Findings and Recommendations on February 28, 2020. (Doc. 63.) Judge Johnston recommends that the Court grant Stapleton's Motion for Summary Judgment. (*Id.* at 19.) Judge Johnston further recommends that the Court deny Plaintiffs' Motion for Summary Judgment. (*Id.*) Judge Johnston also recommends that the Court deny as moot Stapleton's Motion to Exclude the Opinions of Plaintiffs' Expert Witness. (*Id.*) Plaintiffs filed an objection to Judge Johnston's Findings and Recommendations on March 13, 2020. (Doc. 64.)

## BACKGROUND

a. <u>**Minor Political Party Placement on Montana's Statewide Election Ballots**</u>

A minor political party may obtain a place on Montana's statewide election ballots in one of two ways. First, a minor political party will appear automatically on the primary election ballot if in either of the last two general elections the party

had a candidate for statewide office receive a total vote that equaled 5 percent or more of the total votes cast for the successful gubernatorial candidate. Mont. Code Ann. § 13-10-601(1). Second, a minor political party will appear on the primary election ballot if it submits a petition signed by registered voters that complies with the petition program described in Mont. Code Ann. § 13-10-601(2).

Montana's petition program includes a statewide signature requirement, a signature requirement for individual legislative districts (a per-district signature requirement), and a filing deadline. Mont. Code Ann. § 13-10-601(2). The statewide signature requirement directs that the number of registered voters equal to 5 percent or more of the total votes cast for the successful gubernatorial candidate in the last election, or 5,000 registered voters, whichever is less, sign the petition. Mont. Code Ann. § 13-10-601(2)(b).

Montana is divided into 100 legislative districts of approximately equal population. (Doc. 61 at 4.) The per-district signature requirement mandates that registered voters in at least 34 of Montana's 100 legislative districts sign the petition. Mont. Code. Ann. § 13-10-601(2)(b). The per-district signature requirement further mandates that, in at least 34 legislative districts, the number of signatures collected must equal 5 percent or more of the total votes cast for the

3

successful gubernatorial candidate in the last election in that district, or 150 signatures in that district, whichever is less. *Id.*

The county election administrators must receive the signed petition no later than 92 days before the date of the primary election. Mont. Code Ann. § 13-10-601(2)(c)-(d). County election administrators verify the submitted signatures and then forward the verified petition sheets to the Secretary of State at least 85 days before the date of the primary election. Mont. Code Ann. § 13-10-601(2)(c)-(d). The Secretary of State considers and tabulates the verified petition sheets. Upon determining that the petition contains the requisite number of verified signatures, the Secretary of State certifies the minor political party as eligible for placement on the primary ballot. Mont. Code Ann. § 13-27-307.

b. **Montana's 2018 Statewide Elections**

Montana held a statewide primary election on June 5, 2018, and a statewide general election on November 6, 2018. Montana Green Party sought to qualify for the 2018 statewide election under the petition program. *See* Mont. Code Ann. § 13-10-601. Montana Green Party's signatures needed to be submitted to the county election administrators on or before March 5, 2018.

Two Montana Green Party leaders, Danielle and Thomas Breck, began to gather signatures in 2017. The Brecks had submitted only 699 signatures to

election administrators by March 5, 2018. To the Brecks' surprise, a Nevada political consulting firm, Advanced Micro Targeting, independently collected an additional 9,461 signatures from four counties in the three weeks leading up to March 5, 2018. *Larson v. Montana*, 434 P.3d 241, 248 (Mont. 2019). Montana Green Party, between the efforts of Advanced Micro Targeting and the Brecks, submitted a total of 10,160 signatures from 47 legislative districts.

County election administrators verified 7,386 of the signatures from 38 legislative districts submitted by Montana Green Party. County election administrators forwarded the signature sheets to the Secretary of State. The Secretary of State determined that the verified signatures satisfied the statewide signature requirement and the per-district signature requirement in 38 legislative districts. The Secretary of State certified Montana Green Party for placement on the primary election ballot. *Larson*, 434 P.3d at 248.

A group of plaintiffs filed a lawsuit in Montana state district court challenging the Secretary of State's certification of Montana Green Party. The plaintiff group asked the Montana state court to set aside the Secretary of State's certification of the Montana Green Party because of a number of allegedly invalid signatures. The Montana state district court agreed with the plaintiffs and invalidated 87 of the signatures submitted by the Montana Green Party for a

5

variety of reasons. *See Larson*, 434 P.3d at 249-250. The Montana state court's nullification of the 87 signatures resulted in the Montana Green Party satisfying the per-district signature requirement in only 30 legislative districts. The Montana Green Party no longer possessed enough valid signatures in 34 legislative districts to satisfy the per-district signature requirement. *See* Mont. Code Ann. § 13-10-601(2)(b).

The Montana state district court enjoined the Secretary of State from effectuating his prior certification of the Montana Green Party. *Larson*, 434 P.3d at 250. The Montana state district court directed the Secretary of State to remove the Montana Green Party from Montana's 2018 primary election. *Id.* The Montana Supreme Court affirmed on August 21, 2018. *Id*. at 268.

## STANDARD OF REVIEW

The Court reviews de novo those Findings and Recommendations to which a party timely objected. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which the party did not specifically object. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Where a party's objections constitute perfunctory responses argued in an attempt to engage the district court in a reargument of the same arguments set forth in the original response, however, the

Court will review the applicable portions of the findings and recommendations for clear error. *Rosling v. Kirkegard*, 2014 WL 693315 *3 (D. Mont. Feb. 21, 2014).

## DISCUSSION

Plaintiffs brought the current lawsuit to challenge the constitutionality of Montana's petition program. (Doc. 29.) Plaintiffs argue that the petition program violates the First Amendment because the signature requirement severely burdens Montanans' rights to associate politically and to cast votes effectively. Plaintiffs argue further that Montana's petition program violates the Fourteenth Amendment because it allocates unequal power to the registered voters of equally populated legislative districts.

Judge Johnston evaluated Plaintiffs' claims in his Findings and Recommendations. (Doc. 63.) Judge Johnston determined that Montana's petition program complies with the First Amendment as it imposes a reasonable burden on the rights of a minor political party. (Doc. 63 at 9-12.) Judge Johnston further noted that Montana has an important state interest in requiring that each political party on the ballot enjoys a modicum of voter support. (*Id.* at 13.) Judge Johnston determined that the important state interest sufficiently justifies the reasonable burdens imposed by the petition program. (*Id.*)

Judge Johnston next determined that Montana's petition program complies with the Fourteenth Amendment by comparing the program to similar programs in other jurisdictions. (Doc. 63 at 15.) Plaintiffs' equal protection argument mirrors the equal protection arguments rejected by federal appellate courts in *Libertarian Party v. Bond*, 764 F.2d 538, 544 (8th Cir. 1985), and *Semple v. Griswold*, 934 F.3d 1134, 1141-42 (10th Cir. 2019). The Eighth Circuit in *Bond*, 764 F.2d at 544, determined that Missouri's percentage-of-votes formula imposed a reasonable method of establishing the requisite number of petition signers. Missouri's formula complied with the Equal Protection Clause. *Id.* The Tenth Circuit in *Semple*, 934 F.3d at 1141, likewise rejected an equal protection challenge to Colorado's per-district signature requirement. The Tenth Circuit determined that the signature requirement satisfies the Equal Protection Clause when the total population in each district proves "approximately" equal. *Id.* at 1141-42.

Plaintiffs raise six specific objections to Judge Johnston's Findings and Recommendations. (Doc. 64 at 16-34.) The Court addresses each objection.

I. **PLAINTIFFS' OBJECTION ONE: THE COMBINED EFFECT OF MONTANA'S PETITION PROGRAM**

Plaintiffs assert that Judge Johnston misunderstood their constitutional challenge. (Doc. 64 at 16.) Plaintiffs argue that Judge Johnston improperly

construed Plaintiffs' challenge as a challenge only to the per-district signature requirement. Plaintiffs assert that they challenge the combined effect of Montana's petition program. (*Id.* at 17.) That is, Plaintiffs' challenge the combined effect of the statewide signature requirement, the per-district signature requirement, and the filing deadlines. (*Id.*)

Judge Johnston's analysis of the per-district signature requirement instead of the combined effect of Montana's petition program proves of no consequence. Plaintiffs' challenges center around the per-district signature requirement, and Plaintiffs themselves state that the Montana Green Party would have qualified for the ballot "[b]ut for" the per-district signature requirement. (*See* Doc. 64 at 11.) The Court assures the Plaintiffs that it will, however, evaluate Plaintiffs' claims as constitutional challenges to Montana's petition program as a whole. The Court will analyze the constitutionality of the combined effect of (1) the statewide signature requirement; (2) the per-district signature requirement; and (3) the filing deadlines. *See* Mont. Code Ann. § 13-10-601(2).

## II. PLAINTIFFS' OBJECTION TWO: PLAINTIFFS' FIRST AMENDMENT CLAIM

States may regulate a minor political party's access to the ballot so long as the restrictions do not interfere with two fundamental First Amendment rights: the right to associate for the advancement of political believes, and the right of

qualified voters to cast their votes effectively. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 452 (2008); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Courts undertake a two-pronged analysis to weigh the constitutionality of a ballot access law. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Courts first determine the "character and magnitude" of the burden that the ballot access law imposes on the plaintiff's First Amendment rights. *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008). Courts then determine whether the ballot access law imposes a severe or discriminatory restriction on the plaintiff's constitutional rights, or a reasonable, non-discriminatory restriction. *Id.*

Courts identify and evaluate the state's justification for the ballot access law under the second prong. Ballot access laws that impose a severe or discriminatory restriction on the plaintiff's constitutional rights are subject to strict security. *Nader*, 531 F.3d at 1035. Courts will uphold those laws only if the laws are narrowly tailored to serve a compelling state interest. *Id.* Ballot access laws that impose reasonable, nondiscriminatory restrictions are subject to less scrutiny. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Courts will uphold those laws if a state's important regulatory interests justifies them. *Id.*

Plaintiffs object to Judge Johnston's evaluation of the nature and severity of Montana's petition program. (Doc. 64 at 20.) Plaintiffs argue that the petition

program is unconstitutional because the state lawsuit plaintiffs challenged the Montana Green Party's petition signatures after the Secretary of State already had acknowledged the number of signatures. (*Id.* at 20.) Plaintiffs argue specifically that the per-district signature requirement makes Montana's petition program unconstitutionally severe. (*Id.* at 23.)

Montana's per-district signature requirement provides that a minor political party must submit signatures from registered voters equal to 5 percent of the total votes cast for the successful candidate for governor at the last general election in each district, or 150 electors, whichever is less, in at least 34 legislative districts. *See* Mont. Code Ann. § 13-10-601(2)(b). The number of signatures that a minor political party must collect in each district will vary from district to district based on the number of voters in that district who voted for the successful candidate for governor in the previous election. *Id.*

A minor political party must collect 150 signatures in a legislative district if 3,000 or more voters voted for the successful candidate for governor in that legislative district in the last election. A minor political party must collect fewer signatures in a legislative district if fewer than 3,000 people voted for the successful candidate for governor in that legislative district in the last election. Plaintiffs assert that this per-district signature requirement discriminates against

districts where the successful candidate for governor received more votes, because the minor political party must collect more signatures in those districts. (Doc. 64 at 24.) Plaintiffs report that the per-district signature requirement varies from 55 to 150 petition signatures per district. (Doc. 64 at 26.)

Plaintiffs take issue with the fact that the per-district signature requirement mandates a different number of signatures from approximately equally populated legislative districts. (Doc. 64 at 24.) Plaintiffs disagree with Judge Johnston's finding that the per-district signature requirement imposes no severe burden on ballot access. (Doc. 64 at 20-24 (*see* Doc. 63 at 10-12).)

Plaintiffs in their objection to Judge Johnston's First Amendment findings simply restate the arguments they made in their summary judgment motions. Plaintiffs' objections represent an attempt to engage the Court in a reargument of the same arguments set forth previously. As a result, the Court will review Judge Johnston's First Amendment analysis for clear error. *See Rosling*, 2014 WL 693315 at *3. The Court finds no error in Judge Johnston's evaluation of the facts and established law. *See Wash. State Grange*, 552 U.S. at 452.

### III. PLAINTIFFS' OBJECTIONS THREE, FOUR, AND FIVE: PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM

The Fourteenth Amendment's Equal Protection Clause requires each person to have the same voting power as another in a statewide election. *Moore v. Ogilvie*, 394 U.S. 814, 817 (1969). Judge Johnston analyzed relevant case law and concluded that Montana's petition program does not violate the Equal Protection Clause. (Doc. 63 at 13-19.)

Plaintiffs object to Judge Johnston's Fourteenth Amendment analysis. (Doc. 64 at 25-33.) Plaintiffs assert that Montana's justification for the petition program fails to pass constitutional scrutiny. (Doc. 64 at 25.) Plaintiffs argue that it "simply makes no logical sense" for the per-district signature requirement to be unequal depending on the number of the total votes cast for the successful candidate for governor at the last general election. (*Id.* at 26.) Plaintiffs focus on comparing Montana's ballot access laws to other states' ballot access laws. (*Id.* at 30-32.)

Plaintiffs report that Judge Johnston failed to discuss the United States Supreme Court's one-person, one-vote principle as articulated in *Moore v. Ogilvie*, 394 U.S. 814 (1969), and discussed in *Blomquist v. Thomson*, 739 F.2d 525 (10th Cir. 1984). (Doc. 64 at 25.) Plaintiffs further object to Judge Johnston's analysis of *Bond*, 764 F.2d at 554, and *Semple*, 934 F.3d at 1141-41. (Doc. 64 at 28, 32-33.)

13

Plaintiffs' objections to Judge Johnston's Fourteenth Amendment findings, once again, represent a restatement of the arguments made in their summary judgment motions. Judge Johnston disagreed with the Plaintiffs, and the Plaintiffs now attempt to engage the Court in a reargument of the same arguments they previously set forth. The Court, accordingly, will review Judge Johnston's Fourteenth Amendment analysis for clear error. *See Rosling*, 2014 WL 693315 at *3. The Court finds no error.

### IV. PLAINTIFFS' OBJECTION SIX: PLAINTIFFS' EXPERT WITNESS

Plaintiffs object to Judge Johnston's recommendation that the Court deny Defendant's Motion to Exclude the Opinions of Plaintiffs' Expert Witness (Doc. 39) as moot. (Doc. 64 at 33-34.) Plaintiffs state that it is not clear to what extent Judge Johnston rejected or accepted portions of Plaintiffs' expert's evidence. (*Id.*) Plaintiffs urge the Court to reject Judge Johnston's recommendation and accept Plaintiffs' expert's opinions.

Judge Johnston recommended, and the Court agrees, to deny Plaintiffs' motion for summary judgment and grant Stapleton's motion for summary judgment. Defendant's motion to exclude Plaintiffs' expert witness's opinions is moot. The Court will deny it as such.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Judge Johnston's Findings and Recommendations (Doc. 63) are **ADOPTED IN FULL**.

2. Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

3. Plaintiffs' Motion for Summary Judgment (Doc. 36) is **DENIED**.

4. Defendant's Motion to Exclude the Opinions of Plaintiffs' Expert Witnesses (Doc. 39) is **DENIED** as moot.

5. The Clerk of Court is directed to enter judgment accordingly.

DATED this 20th day of March, 2020.

_____
Brian Morris, Chief District Judge
United States District Court